EUGENIO VARAGNOLO, Appellant, *v.* PARTOLA MANUFACTURING COMPANY, Respondent.

First Department, May 16, 1924.

Sales — action by buyer to recover damages for failure to deliver — sale of caustic soda for shipment abroad during June, 1917 — buyer extended time of delivery but reserved all rights for failure to deliver as agreed — export was prohibited in September, 1917, except on license by Exports Administrative Board, which license could not be procured — inability to procure license not defense to action for damages.

In an action to recover damages for the failure of a seller to deliver caustic soda to the buyer who resided in Italy under a contract calling for delivery in June, 1917, the inability of the buyer to secure a license from the Exports Administrative Board permitting him to ship the soda out of the United States is not a defense, since it appears that the prohibition against shipment without a license was not promulgated until September, 1917, and the fact that the

buyer from time to time urged shipment and extended the time therefor did not extend the contract, since at all times the buyer reserved his right to damages caused by the delay of the seller in shipping the goods as agreed in the original contract; the impossibility of performance was due to the default of the seller in making shipment in June, 1917, and not to the act of the Federal government in prohibiting shipment in September, 1917.

APPEAL by the plaintiff, Eugenio Varagnolo, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 30th day of June, 1923, upon the dismissal of the complaint at the close of the plaintiff's case, and also from an order entered in said clerk's office on the 28th day of June, 1923, denying the plaintiff's motion for a new trial made upon the minutes.

*Hunt, Hill & Betts* [*Robert McLeod Jackson* of counsel], for the appellant.

*Hovell, McChesney & Clarkson* [*Robert L. Luce* of counsel; *Sidney A. Clarkson* with him on the brief], for the respondent.

McAVOY, J.:

Most of the facts in this case were stipulated, the only oral testimony in the case being chiefly directed to the market price of caustic soda in New York from June to October, 1917. There were two causes of action, but only one survives, the second, in which suit was brought to recover $200,000 damages said to have been suffered by plaintiff because defendant failed to ship merchandise after repeated demand for such shipment under a contract in which defendant sold to plaintiff 1,000 tons of American caustic soda at $26.50 per 100 kilos, and agreed to pay freight and insurance, including war risk insurance, and to ship to plaintiff at Genoa, Italy, during the month of June, 1917. Defendant did ship 175 tons of the caustic soda, which was received and accepted and paid for by the plaintiff in August, 1917, at which time plaintiff alleges he reserved all rights against defendant for damages caused by the delay of defendant in shipping the soda.

The answer alleges an extension of time by plaintiff for shipment of the goods to and including October 31, 1917, and beyond that time. It is conceded that there was issued pursuant to Federal statute enacted in June, 1917, a proclamation by the President of the United States forbidding exportation of caustic soda, except upon license to be granted as therein prescribed;* and it appears

* See Espionage Act of 1917 (40 U. S. Stat. at Large, 225), tit. 7, § 1 *et seq.*, approved June 15, 1917; Pres. Proc. Aug. 27, 1917, 40 U. S. Stat. at Large, 1691 *et seq.;* Order Exports Administrative Board Sept. 28, 1917, Official Bulletin Sept. 28, 1917, Vol. 1, No. 119, pp. 1, 2; Pres. Proc. Nov. 28, 1917, 40 U. S. Stat. at Large, 1720.— [REP.

undisputed that application for license on defendant's behalf prior to October, 1917, was denied by the Exports Administrative Board.

The negotiations for the sale of this soda began with the telegram in May, 1917, by defendant to one Cortese, a Genoese merchant, who had theretofore acted for defendant in sales of caustic soda. Thereafter the defendant cabled Cortese that it booked Varagnolo, the plaintiff, 1,000 tons at twenty-six dollars and fifty cents, and was shipping partly on the steamer *Ravenscraig;* that it would appreciate Varagnolo's permission to ship 400 tons by a British schooner; and that it wanted immediate confirmed credit since steamer was sailing promptly.

Plaintiff declined to consent to ship by the British schooner, and thereafter Cortese wrote to the plaintiff: " I confirm for you thereby (*sic*) the sale made to you, for the account of the Partola Mfg. Co., represented by me, of 1,000 (one thousand) tons American caustic soda, 76/78, solid, at the price of $26.50 per 100 kilos, .cif. Genoa, war risk included (insurance taken out to cover only the amount of the invoice, without imaginary profit), loading in June by steamer, payment in full in cash against documents in New York, by credit confirmed immediately by cable."

On the next day, the 29th of May, 1917, plaintiff, through the Banco di Roma, established a confirmed credit with the Guaranty Trust Company of New York for $265,000 to cover the 1,000 tons of caustic soda and the Guaranty Trust Company thereafter advised defendant that the credit at that sum had been established and set forth the terms of the sale and how the amount so set up as credit would be available and giving the particulars of the documents required.

Thereafter the credit which was to remain in force up to September 15, 1917, for the strictly June shipment was extended from time to time, and payment was agreed to be made on presentation of the various documents specified, even though on later shipments.

There was nothing shipped until August 18, 1917, when the 175 tons heretofore mentioned were forwarded, and payment was thereafter made for this shipment from the letter of credit on presentation of the documents which were required under the letter. No shipment of the balance of 825 tons was thereafter ever made.

During all this period it is claimed the defendant had under its control available for shipment at least 825 tons of the caustic soda, described in the contract aforesaid, but bases its failure to deliver on the plea that it was unable to procure a license for export. Plaintiff, himself, requested the Banco di Roma to have the Guaranty Trust Company extend the $265,000 credit in defendant's

favor from July 4 to July 31, 1917, and the Guaranty Trust Company advised defendant that it had in accordance with its instructions extended the time until July thirty-first. Thereafter various extensions of the credit were granted, and on the sixteenth of October there was a final extension until the end of that month under the same conditions.

On September 28, 1917, the Exports Administrative Board issued a proclamation, under the Congressional act permitting it, placing this material on the conservation list, and exportation thereafter was allowed only upon licenses issued by that Board.

In October, 1917, the plaintiff's attorneys endeavored to secure the necessary license from the Exports Administrative Board for the export of the soda here involved, and thereafter wrote on October twelfth that they found it impossible to obtain a license to export the caustic soda to Genoa because the purchase was not made for the Italian government or ammunition works, and under the ruling of the Board having control of licenses for export, no shipment would be permitted.

There is no doubt that Varagnola, the plaintiff, constantly solicited the shipment of the balance of the merchandise after the original due date, and in his demands insisted, too, that thereby he did not renounce his rights for damages by reason of the delayed embarkation or because of the extra expense to be incurred when the goods should come.

No other shipment having been made up to October 15, 1917, plaintiff on that date canceled the contract.

The trial court dismissed the complaint upon the ground that the contract was extended, and was in existence on September 28, 1917, when the order of the Exports Administrative Board forbidding exports, except on a license, went into effect; that thereafter no caustic soda could be exported, except upon license, and that the proof was undisputed that an application for such license was denied. The trial court said in granting the motion that it found that the time for delivery was extended and that goods were shipped and accepted after the date due; that apparently plaintiff himself considered the contract in force until some time in October, and that since from the evidence the time for delivery had been extended, and at the time when the contract was canceled the embargo was in force, the defendant could not comply with the contract. Hence no cause of action existed in favor of the plaintiff, and he could recover no damages for non-shipment.

There seems no legal doubt that a governmental prohibition of the export of goods is an excuse for non-performance of a contract so to export upon the doctrine that performance would thereby

be rendered illegal and would subject a contracting party to prosecution with attendant fine or imprisonment.

The acts of the Federal authorities incident to the war being lawful, such an act within authority as prevents or renders impossible performance, excuses the party restrained.

If the defendant, as it contends, had until the end of October to perform, and provided it has shown that performance by it on that day was lawfully forbidden and would have been illegal, its defense would be sufficient, for it would not be held liable for a breach of its contract on the theory that it might lawfully have performed the contract before the time it had agreed to perform.

It is true, too, that if the contract ran to October 31, 1917, plaintiff's cancellation on October 15, 1917, relieved the defendant of any duty under the contract and would be a defense to the cause of action.

The facts do not warrant a finding that the contract was so extended. Throughout the series of extensions of time to perform, the plaintiff reserved his right to damages for the delay in shipment and gave these extensions without prejudice to whatever rights accrued through defendant's original default in performance. And before cancellation he gave notice in September to ship not later than the fifteenth of October. While he thus kept alive the contract for the purposes of defendant's duty to ship, he did not waive any damages for defendant's breach of the contract in failing to comply with the original terms of the shipment. Nor was the time of performance of the contract thus extended without recourse to damage arising from the failure to ship and without the right to cancel after notice to restore time of performance. Neither should his waiver of time of performance in respect of shipment debar him from damages arising from the failure of defendant to ship the caustic soda because of the subsequently arising prevention of exports of this material by the governmental agents having authority.

If defendant had shipped according to its contract its goods would have been exported before this prohibition, and their departure would not have been interdicted. Thus the loss arising from the prevention of performance is put upon the person whose act was its legal cause, that is, upon defendant whose default was its neglect of its original duty of prompt shipment. Impossibility of performance which comes about through a default of defendant is not excused where through failing to carry out its obligations the prohibition becomes applicable to its contract.

The prevention of these shipments by governmental act was not caused by plaintiff's extensions of time, but by defendant's

352 HARTFORD ACCIDENT & INDEMNITY Co. *v.* U. S. F. & G. Co.

First Department, May, 1924. [Vol. 209]

failure to act promptly in the matter of shipping the merchandise. To preclude plaintiff from recovering because of his leniency in extensions of time, so that he might fulfill his own contracts of resale, would be to punish him who had done no wrong, and to acquit the wrongdoer for a cause which was not the prime ground of his default.

The judgment dismissing the complaint and the order appealed from should be reversed and a new trial ordered, with costs to appellant to abide the event.

DOWLING, SMITH, MERRELL and FINCH, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.